JEAN-PAUL JASSY, Cal Bar No. 205513
jpjassy@jassyvick.com
NICHOLAS R. HARTMANN, Cal Bar No. 301049
nhartmann@jassyvick.com
JASSY VICK CAROLAN LLP
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: 310-870-7048
Facsimile: 310-870-7010

Attorneys for Defendants
PARAMOUNT GLOBAL,
CBS BROADCASTING INC., and
INSIDE EDITION INC.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

DESIREE GUERRIERE TOWNSEND, an individual,

Plaintiff,

vs.

PARAMOUNT GLOBAL, a Delaware corporation; CBS BROADCASTING INC., a New York corporation, and INSIDE EDITION INC., a New York corporation,

Defendants.

Case No. 2:25-cv-04077-MRA-DFM

Honorable Mónica Ramírez Almadani

**DEFENDANTS' SPECIAL MOTION TO STRIKE FIRST AMENDED COMPLAINT UNDER CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES**

[Defendants' Motion to Dismiss Sixth Claim, Request for Judicial Notice, Notice of Lodging, and [Proposed] Orders filed concurrently]

**Hearing Date**: October 20, 2025
**Hearing Time**: 1:30 p.m.
**Courtroom**: 9B, 411 W. Fourth St. Santa Ana, CA 92701

TO THE HONORABLE COURT AND PLAINTIFF *PRO SE*:

PLEASE TAKE NOTICE that on October 20, 2025 at 1:30 p.m., or as soon thereafter as they may be heard, before the Honorable Mónica Ramírez Almadani, United States District Judge, in Courtroom 9B of the Ronald Reagan Federal Building and United States Courthouse located at 411 West 4th Street, Santa Ana, California 92701-4516, Defendants Paramount Global ("Paramount"), CBS Broadcasting Inc. ("CBS"), and Inside Edition Inc. ("Inside Edition") (collectively, "Defendants") will, and hereby do, move this Court for an order striking Claims 1, 2, 3, 4, 5, and 7 (collectively, the "State Law Claims") from the First Amended Complaint ("FAC" or "Dkt. 12") filed by Plaintiff Desirée Guerriere Townsend ("Plaintiff" or "Townsend"), in whole or in part, with prejudice and without leave to amend, pursuant to California Code of Civil Procedure § 425.16 ("Section 425.16" or the "anti-SLAPP[1] statute"), analyzed under the standards of Federal Rule of Civil Procedure 12. *See Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155-56 (9th Cir. 2021).[2] Defendants also request that the Court enter an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 425.16(c).[3]

Plaintiff's Claim 1 for defamation, Claim 2 for false light invasion of privacy, Claim 3 for intentional infliction of emotional distress ("IIED"), Claim 4 for violation of California Civil Code § 3344, Claim 5 for violations of the California Unruh Civil Rights Act (Civil Code § 51), and Claim 7 for negligent supervision, hiring, and retention are all based on and arise from Defendants' speech, alleged speech, and conduct in furtherance thereof, in connection with, and in furtherance of, issues of public interest. Each of the State Law Claims falls within the scope of Section

---

[1] SLAPP is an acronym that stands for "Strategic Lawsuits Against Public Participation."

[2] Defendants concurrently filed a motion to dismiss Plaintiff's sixth claim, for alleged violations of the American with Disabilities Act, 42 U.S.C. § 12182.

[3] If this Motion, or any part thereof, is granted, then Defendants will file a noticed motion to recover attorneys' fees and costs.

425.16(e).

The burden therefore shifts to Plaintiff to establish a probability of prevailing on each of the State Law Claims. Plaintiff cannot satisfy that burden, and each of those claims should be stricken in whole or at least in part:

- Plaintiff's State Law Claims are all barred by the First and Fourteenth Amendments to the United States Constitution, and article 1, section 2 of the California Constitution.
- Plaintiff's State Law Claims are all barred by the applicable statutes of limitations.
- Plaintiff's Claims 1, 2 and 3 are barred because she will not be able to establish any damages.
- Plaintiff's Claim 1 for defamation also fails because: (1) Plaintiff did not identify any allegedly false defamatory statements; (2) the purported implications that she references are not reasonable as a matter of law; (3) even if the purported implications were reasonable, they are constitutionally protected; (4) even if the purported implications were verifiable, they are not false; and (5) Plaintiff did not plead actual malice with the requisite particularity.
- Plaintiff's Claims 2, 3, 4, 5, and 7 fail for the same reasons the defamation claim fails, and because they are duplicative and superfluous to the defamation claim.
- Plaintiff's Claim 4 for violation of California Civil Code § 3344 also fails because the speech at issue cannot give rise to liability as it is speech in connection with public affairs and matters of public interest, it is constitutionally protected, and there is no direct connection between the speech and a commercial purpose.
- Plaintiff's Claim 5 for violation of the Unruh Act, Cal. Civ. C. § 51, also fails because it interferes with Defendants' constitutional right of editorial discretion.
- Plaintiff's State Law Claims are barred, and Defendants are immune from liability, under the Communications Decency Act, 47 U.S.C. § 230, to the extent those claims are based on third party content.

- Plaintiff's State Law Claims are also barred under the California Civil Code § 47(b)'s absolute privilege to the extent those claims are based on pre-litigation communications from Defendants' counsel.

**This motion is made following a conference between counsel for Defendants and Plaintiff pursuant to Local Rule 7-3, which took place on July 22, 2025, by telephone wherein Defendants' counsel explained in detail the bases for the Motion, as well as a follow up teleconference on September 3, 2025, and Plaintiff declined to dismiss the State Law Claims.** *See* Jassy Declaration.

This Motion is based upon this Notice; the attached Memorandum of Points and Authorities; the concurrently filed Request for Judicial Notice with accompanying exhibits; all pleadings, records, and other documents on file with the Court in this action; and upon such oral argument as may be presented at the hearing of this Motion.

Defendants respectfully request that this Court grant their Motion and strike and dismiss Plaintiff's State Law Claims with prejudice and without leave to amend.

Dated: September 12, 2025

JASSY VICK CAROLAN LLP

By: ___*/s/ Jean-Paul Jassy*____________
Jean-Paul Jassy

Counsel for Defendants
Paramount Global, CBS Broadcasting Inc., Inside Edition Inc.

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. STATEMENT OF PERTINENT FACTS ..... 2

III. CALIFORNIA'S ANTI-SLAPP STATUTE APPLIES TO PLAINTIFF'S STATE LAW CLAIMS ..... 5

- A. California's Anti-SLAPP Statute Applies in Federal Court ..... 5
- B. The Anti-SLAPP Statute Is Construed Broadly ..... 5
- C. Defendants Satisfy the First Step in the Anti-SLAPP Analysis ..... 6

IV. PLAINTIFF CANNOT DEMONSTRATE A PROBABILITY OF PREVAILING ON HER STATE LAW CLAIMS ..... 8

- A. Plaintiff's State Law Claims Are All Time-Barred ..... 9
- B. Plaintiff's Defamation, False Light And IIED Claims Are Also Barred Because She Cannot Establish Any Recoverable Damages ..... 11
- C. Plaintiff's Defamation Claim Fails for Additional Reasons ..... 13
  - 1. Plaintiff Does Not Identify Any Allegedly False Statements ..... 13
  - 2. The Purported Implications Are Not Reasonable ..... 13
  - 3. Even If They Were Reasonable, The Purported Implications Are Constitutionally Protected Speech ..... 14
  - 4. Even If Verifiable, No Statements Were False ..... 16
  - 5. Plaintiff Failed to Adequately Plead Actual Malice ..... 16
- D. Plaintiff's Ancillary State Law Claims Are Also Barred ..... 17
  - 1. The Ancillary State Law Claims Are Superfluous ..... 17
  - 2. The Ancillary State Law Claims Fail for the Same Reasons the Defamation Claim Fails ..... 18
  - 3. The Section 3344 Claim Fails for Three Additional Reasons ..... 18

4. The Unruh Act Claim Is Barred by the First Amendment ..........20

E. Portions of Plaintiff's State Law Claims Are Barred for Other Reasons ..........20

1. To the Extent the State Law Claims Are Based on Third Party Content, They Must Be Stricken ..........20

2. The State Law Claims Are Barred to the Extent They Are Based on Communications from Defendants' Counsel ..........21

V. CONCLUSION ..........21

DECLARATION IN COMPLIANCE WITH L.R. 7-3 ..........22

CERTIFICATION OF COMPLIANCE WITH L.R. 11-6.2 ..........23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ampex Corp. v. Cargle*,
128 Cal.App.4th 1569 (2005)....7

*Anschutz Enter. Grp., Inc. v. Snepp*,
171 Cal.App.4th 598 (2009)....12

*Baral v. Schnitt*,
1 Cal.5th 376 (2016)....5

*Barrett v. Rosenthal*,
40 Cal.4th 33 (2006)....6, 21

*Bauer v. Athletic Media Co.*,
2022 WL 18586268 (C.D. Cal. Dec. 5, 2022)....12

*Baugh v. CBS, Inc.*,
828 F.Supp. 745 (N.D. Cal. 1993)....18

*Birdwell v. Avalon Bay Communities, Inc.*,
742 F.Supp.3d 1024 (N.D. Cal. 2024)....9

*Blanchard v. DIRECTV, Inc.*,
123 Cal.App.4th 903 (2004)....21

*Blatty v. New York Times Co.*,
42 Cal.3d 1033 (1986)....18

*Brewer v. Hustler Magazine, Inc.*,
749 F.2d 527 (9th Cir. 1984)....19

*Chapin v. Knight-Ridder, Inc.*,
993 F.2d 1087 (4th Cir. 1993)....15

*City of Colton v. Singletary*,
206 Cal.App.4th 751 (2012)....20

*Couch v. San Juan Unif. Sch. Dist.*,
33 Cal.App.4th 1491 (1995)....17

*Cross v. Cooper*,
197 Cal.App.4th 357 (2011)....7

*D.A.R.E. America v. Rolling Stone Magazine*,
101 F.Supp.2d 1270 (C.D. Cal. 2000)....11

*DiGiorgio Corp. v. Valley Labor Citizen*,
260 Cal.App.2d 268 (1968)....................11

*Doe v. Gangland Prods., Inc.*,
730 F.3d 946 (9th Cir. 2013).................... 8, 9, 19

*Dora v. Frontline Video, Inc.*,
15 Cal.App.4th 536 (1993)....................19

*Eliott v. Lions Gate Ent. Corp.*,
639 F.Supp.3d 1012 (C.D. Cal. 2022).................... 13, 18

*Equilon Enters. v. Consumer Cause*,
29 Cal.4th 53 (2002)....................5

*Fellows v. Nat'l Enquirer, Inc.*,
42 Cal.3d 234 (1986)....................11

*FilmOn.com, Inc. v. DoubleVerify Inc.*,
7 Cal.5th 133 (2019).................... 6, 7, 8

*Forsher v. Bugliosi,*
26 Cal.3d 792 (1980)....................13

*Gang v. Hughes*,
111 F.Supp. 27 (S.D. Cal. 1953)....................12

*Gilbert v. Sykes*,
147 Cal.App.4th 13 (2007)....................18

*Gomes v. Fried*,
136 Cal.App.3d 924 (1982)....................12

*Greenbelt Publ. Assn. v. Bresler*,
398 U.S. 6 (1970)....................14

*Hecimovich v. Encinal Sch. Parent Teacher Org.*,
203 Cal.App.4th 450 (2012)....................6

*Herring Networks, Inc. v. Maddow*,
8 F.4th 1148 (9th Cir. 2021)....................5, 15

*Hoffman v. Capital Cities/ABC, Inc.*,
255 F.3d 1180 (9th Cir. 2001).................... 18, 19

*Info. Control Corp. v. Genesis One Comput. Corp.*,
611 F.2d 781 (9th Cir. 1980)....................14

*Ingels v. Westwood One Broad. Svcs., Inc.*,
129 Cal.App.4th 1050 (2005)....................20

*Kalpoe v. Super. Ct.*,
222 Cal.App.4th 206 (2013)....................11

*Leidholt v. L.F.P., Inc.*,
860 F.2d 890 (9th Cir. 1988)....................19

*Lieberman v. Fieger*,
338 F.3d 1076 (9th Cir. 2003)....................16

*Long v. Walt Disney Co.*,
116 Cal.App.4th 868 (2004)....................9

*Med. Marijuana, Inc. v. ProjectCBD.com*,
46 Cal.App.5th 869 (2020)....................13

*Miami Herald Pub. Co. v. Tornillo*,
418 U.S. 241 (1974)....................20

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990).................... 14, 15

*Monitor Patriot Co. v. Roy*,
401 U.S. 265 (1971)....................7, 8

*Montana v. San Jose Mercury News, Inc.*,
34 Cal.App.4th 790 (1995)....................18

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)....................20

*Navellier v. Sletten*,
29 Cal.4th 82 (2002)....................6

*NBCUniversal Media, LLC v. Superior Ct.*,
225 Cal.App.4th 1222 (2014)....................9

*Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*,
951 F.3d 952 (8th Cir. 2020)....................17

*Nicosia v. DeRooy*,
72 F.Supp.2d 1093 (N.D. Cal. 1999).................... 16, 17

*Nizam-Aldine v. City of Oakland*,
47 Cal.App.4th 364 (1996).................... 13, 16

*Nygård, Inc. v. Uusi-Kerttula*,
159 Cal.App.4th 1027 (2008)....................6

*Pacific Gas & Elect. Co. v. Bear Stearns & Co.*,
50 Cal.3d 1118 (1990)....................21

*Partington v. Bugliosi*,
56 F.3d 1147 (9th Cir. 1995)....15

*Peabody v. Barham*,
52 Cal.App.2d 581 (1942)....12

*Polydoros v. Twentieth Cent. Fox Film Corp.*,
67 Cal.App.4th 318 (1997)....19

*Pridonoff v. Balokovich*,
36 Cal.2d 788 (1951)....12

*Reader's Digest Assn. v. Super. Ct.*,
37 Cal.3d 244 (1984)....18

*Roberts v. McAfee, Inc.*,
660 F.3d 1156 (9th Cir. 2011).... 9, 10, 11

*Rubin v. Green*,
4 Cal.4th 1187 (1993)....21

*Rudwall v. BlackRock, Inc.*,
289 Fed. Appx. 240 (9th Cir. 2008)....17

*Seelig v. Infinity Broad. Corp.*,
97 Cal.App.4th 798 (2002).... 17, 18

*Sexton v. Apple Studios LLC*,
110 Cal.App.5th 183 (2025)....8

*Shively v. Bozanich*,
31 Cal.4th 1230 (2003)....9

*Stewart v. Rolling Stone LLC*,
181 Cal.App.4th 664 (2010)....7

*Thomas v. Los Angeles Times Commc'ns LLC*,
189 F.Supp.2d 1005 (C.D. Cal. 2002)....15

*Traditional Cat Assn., Inc. v. Gilbreath*,
118 Cal.App.4th 392 (2004).... 9, 10, 11

*Underwager v. Channel 9 Australia*,
69 F.3d 361 (9th Cir. 1995).... 14, 15, 16

*U.S. Western Falun Dafa Assn. v. Chinese Chamber of Commerce*,
163 Cal.App.4th 590 (2008)....20

*Vogel v. Felice*,
127 Cal.App.4th 1006 (2005).... 16, 17

*Weingarten v. Block*,
102 Cal.App.3d 129 (1980) ....................................................... 7

*Wong v. Jing*,
189 Cal.App.4th 1354 (2010) ....................................................... 21

**U.S. Constitution**

Amendment I, XIV ....................................................... 5, 15, 18, 20

**Federal Statutes**

47 U.S.C. § 230(c)(1) ....................................................... 21

**Federal Rules**

Fed. R. Civ. Proc. 11 ....................................................... 10

Fed. R. Civ. Proc. 12 ....................................................... 5, 15

Fed. R. Civ. Proc. 56 ....................................................... 5

**California Constitution**

Article I, § 2 ....................................................... 20

**State Statutes**

Civil Code
§ 47(b) ....................................................... 21
§ 48a ....................................................... 4, 11
§ 48a(a) ....................................................... 11, 12
§ 51 ....................................................... 5, 9, 17, 20
§ 3344 ....................................................... 4, 9, 17, 18, 19
§ 3344(a) ....................................................... 19
§ 3344(d) ....................................................... 18
§ 3425.3 ....................................................... 9

Code of Civil Procedure
§ 335.1 ....................................................... 9
§ 340(c) ....................................................... 9
§ 425.16 ....................................................... 2, 5, 17, 20
§ 425.16(a) ....................................................... 5, 6
§ 425.16(b)(1) ....................................................... 5
§ 425.16(e) ....................................................... 6

§ 425.16(e)(3) ....................................................................................6
§ 425.16(e)(4) ....................................................................................6

**Miscellaneous**

CACI Jury Instruction No. 1600 ....................................................................12
CACI Jury Instruction No. 1802 ....................................................................12
https://www.insideedition.com/159-flu-shot-woman ..........................................4

## I. INTRODUCTION

In 2009, Desirée Jennings, a healthy young woman who worked as a "Cheerleader Ambassador" for a professional football team, got a seasonal flu vaccine. Days later, she attracted nationwide attention as the "flu shot cheerleader" when she claimed that the vaccine gave her strange neurological symptoms. Among the many media reports at the time, the television news program *Inside Edition* did a report with Jennings in October 2009 depicting her muscle spasms and slurred speech, and how she could walk backward—but not forward—normally.

A few months later, *Inside Edition*'s investigative journalists observed Jennings in public walking normally, playing with her dogs, going shopping, and driving a car. Eventually, they approached her in a parking lot to ask about the status of her symptoms. She responded in a foreign accent she did not have previously, and said she still had some symptoms. *Inside Edition* published a second report in February 2010 that included a segment broadcast on television, a posting on the internet, and a press release (together, the "February 2010 Report"). The February 2010 Report raised questions about Jennings' condition and its causes, it quoted Jennings extensively, and ended by noting that Jennings showed *Inside Edition* a report "from a doctor who also believes her symptoms were vaccination-induced." *Inside Edition* did not republish the February 2010 Report.

*Fifteen years later*, in 2025, Jennings, now known as Desirée Townsend, is running for Mayor of Los Angeles. She claims that the February 2010 Report, or at least portions thereof, is being disseminated by third parties on social media platforms in order to mock her. Townsend asked *Inside Edition* to remove the February 2010 press release from the internet, which it did as a courtesy while standing by the integrity of its 2010 reporting. She then demanded that *Inside Edition* remove the entirety of the February 2010 Report, and also pursue the third parties who were mocking her. *Inside Edition* declined.

Townsend then filed suit over the 15-year-old February 2010 Report, accusing Defendants of defaming her, putting her in a false light, intentionally inflicting emotional distress, violating her right of publicity, and disability discrimination. After filing her original Complaint, Townsend prepared multiple posts online about the suit, attracting more attention to herself and the February 2010 Report.

Defendants seek to dispose of Townsend's meritless suit and stand behind the February 2010 Report. This special motion to strike, brought under California's anti-SLAPP statute, C.C.P. § 425.16 ("Section 425.16"), targets Townsend's state law claims, each of which arises from the February 2010 Report that discussed Townsend's very public and controversial allegations of a vaccination-induced illness. Townsend does not state a claim for myriad reasons, but especially because each of her claims is time-barred. Defendants' motion should be granted.

## II. STATEMENT OF PERTINENT FACTS[1]

In October 2009, Plaintiff Desirée Townsend (then Desirée Jennings) was the subject of extensive national and local public reporting in which she participated after claiming that she developed a rare neurological disorder after getting a flu vaccine. FAC ¶ 3, Ex. A. She appeared in multiple news broadcasts, including one in October 2009 by *Inside Edition*, with video footage "depicting the severity of her symptoms," FAC ¶ 37, Exs. A, 10–11, 24–26, which included muscle spasms and slurred speech, *id*. The broadcasts showed, among other things, that Plaintiff had great difficulty walking forward, but had little to no difficulty walking backward. *Id.*

Plaintiff alleges that "in or around January 2010" *Inside Edition* journalists filmed Plaintiff publicly engaging in activities of daily living, seemingly without any of the symptoms she previously exhibited. FAC ¶¶ 37, 43, Ex. A. When approached by *Inside Edition* journalists in a parking lot where she was filmed walking without obvious difficulty, Plaintiff asserted that she still suffered symptoms, and denied they

[1] Defendants' statement of facts is nearly identical in both motions before the Court.

were "psychogenic" or "a hoax." Exs. A, 1–2. Plaintiff alleges that "shortly after" the parking lot discussion, she met with *Inside Edition* journalists at her home, where she voluntarily provided them with "medical documentation" of her diagnosis and treatment. FAC ¶ 38.

In early February 2010, *Inside Edition* broadcast a follow-up report raising questions about Plaintiff's condition and showing what appeared to be dramatic improvement in Plaintiff's outward physical symptoms, depicting Plaintiff, for example, "walking normally, playing with her dogs, going shopping, and getting behind the wheel of a car and driving!" Exs. A, 1–2. It included Plaintiff's first-hand accounts, and ended by noting that Plaintiff provided a "report from a doctor who also believes her symptoms were vaccination-induced." *Id.* Plaintiff alleges that *Inside Edition*'s follow-up report "consisted of a press release, a written article hosted on a dedicated page of Defendants' website, and a video segment that originally aired as part of a television broadcast and was also made available on a dedicated webpage and distributed across Defendants' branded digital platforms" (together, the "February 2010 Report"). FAC ¶¶ 28, 42.[2]

Fifteen years later, on April 10, 2025, Plaintiff sent an email asking for removal of "the press release published by your organization on February 4, 2010" along with a specific link where the press release could be found. Ex. B at 60. Plaintiff's email acknowledged that "this publication may fall outside the statute of limitations for legal action," but she was making the request "particularly as [she] prepare[s] to enter public service with a campaign for Mayor of Los Angeles." *Id.* An *Inside Edition* representative responded on April 14, standing by the accuracy of the report, but agreeing to remove the press release as a courtesy. Ex. B at 59–60.

[2] Plaintiff makes clear, however, that the February 2010 Report did not appear on "social media platforms such as Instagram and TikTok" because those platforms "did not yet exist." *Id.* ¶ 47 (at 20) (NB: Plaintiff repeats paragraphs 43 to 49 in the FAC).

In a follow-up email, on April 15, Plaintiff pointed to third party posts on TikTok that, according to Plaintiff, "stem[] from the Inside Edition segment that aired in 2010." Ex. B at 58–59. Plaintiff's April 15 email did not request that anything be taken down, but instead asked "Inside Edition or any other CBS affiliate" to do another report "revisiting" Plaintiff's story 15 years later. *Id.* The same *Inside Edition* representative responded on April 17 that the video Plaintiff referenced "does not appear on our digital platforms," and that, it is "unfortunate that you have been subjected to hateful comments, but we do not have the ability to police the behavior of people on online platforms [*e.g.*, TikTok] that we do not control." *Id.* at 57.

The following day, April 18, 2025, Plaintiff sent a letter purportedly pursuant to California Civil Code § 48a demanding retraction of "the *Inside Edition* segment published and broadcast by CBS Media Ventures on or about February 3, 2010," which "remains publicly accessible [at] https://www.insideedition.com/159-flu-shot-woman" (the "Retraction Demand"). Ex. C at 62. The letter acknowledged that "the accompanying video segment has long since been removed" from the webpage. *Id.* The Retraction Demand also insisted on a "correction" to explain Plaintiff's medical condition, and the "prompt filing of takedown requests" with third party platforms "such as Facebook, Instagram, TikTok, and YouTube" where, Plaintiff claimed, video of the February 2010 Report had been posted by third parties. *Id.* at 64. Counsel for Defendants responded in writing one week later explaining the decision not to issue a retraction. Ex. D.

More than 15 years after the February 2010 Report, and after Plaintiff started running for Mayor of Los Angeles, Plaintiff filed this lawsuit and then the FAC. Dkt. 1, 12. The FAC alleges seven claims, all of which arise out of "the February 4, 2010 broadcast at the center of this case." FAC ¶¶ 50, 78–122. This motion targets Claims 1-5 and 7 for defamation, false light, intentional infliction of emotional distress ("IIED"), violation of Civil Code § 3344 ("Section 3344"), and violations of the

Unruh Act, Civil Code § 51 (the "Unruh Act"), and negligent supervision, hiring and retention (together, the "State Law Claims").

## III. CALIFORNIA'S ANTI-SLAPP STATUTE APPLIES TO PLAINTIFF'S STATE LAW CLAIMS

### A. California's Anti-SLAPP Statute Applies in Federal Court

California's anti-SLAPP statute, C.C.P. § 425.16 ("Section 425.16"), applies in federal cases with state law claims. *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021). In federal court, anti-SLAPP motions are divided "into two categories: motions that challenge the legal sufficiency of complaints and motions that challenge the factual sufficiency of complaints. The former of these categories are analyzed pursuant to Rule 12; the latter are analyzed pursuant to Rule 56." *Id.* at 1155–56 (citation omitted). This anti-SLAPP motion is brought pursuant to Rule 12.

### B. The Anti-SLAPP Statute Is Construed Broadly

"Resolution of an anti-SLAPP motion involves two steps." *Baral v. Schnitt*, 1 Cal.5th 376, 384 (2016). Under the first step, a court decides "whether the defendant has made a threshold showing that . . . the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech[.]'" *Equilon Enters. v. Consumer Cause*, 29 Cal.4th 53, 67 (2002); *Herring Networks*, 8 F.4th at 1155; C.C.P. § 425.16(b)(1).

"If the defendant satisfies" the first step, "the burden then shifts to the plaintiff to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Herring Networks*, 8 F.4th at 1155. "The district court must grant the defendant's motion … if the plaintiff presents an insufficient legal basis for the claims or no reasonable jury could find for the plaintiff." *Id.* (cleaned up). The anti-SLAPP statute must be construed "broadly" to further the purpose of "allow[ing] for early dismissal of meritless First Amendment cases aimed at chilling expression through costly, time-consuming litigation." *Id.*; C.C.P. § 425.16(a).

### C. Defendants Satisfy the First Step in the Anti-SLAPP Analysis

A defendant need only show that its alleged conduct "fits *one* of the [four] categories spelled out in section 425.16, subdivision (e)." *Navellier v. Sletten*, 29 Cal.4th 82, 88 (2002) (emphasis added). Here, Plaintiff's State Law Claims fall within Sections 425.16(e)(3) and (e)(4) because they all arise from Defendants' alleged speech "in connection with a public issue or an issue of public interest." C.C.P. § 425.16(e)(4); FAC. ¶¶ 80–84, 86–90, 92, 96–98, 104–06.[3]

"Like the SLAPP statute itself, the question whether something is an issue of public interest must be construed broadly." *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal.App.4th 450, 464 (2012); *see also* C.C.P. § 425.16(a) (mandating that the anti-SLAPP statute "shall be construed broadly"); *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1042 (2008) ("an issue of public interest" under the anti-SLAPP statute "is any issue in which the public is interested"). The "public interest" determination involves a "two-part analysis." *FilmOn.com, Inc. v. DoubleVerify Inc.*, 7 Cal.5th 133, 149–50 (2019). "First, we ask what 'public issue or [ ] issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech. Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest." *Id.* (citation omitted). As part of the public interest analysis, courts will often look to "whether the subject of the speech or activity 'was a person or entity in the public eye' … and whether the activity 'occur[red] in the context of an ongoing controversy, dispute or discussion' … .'" *Id.* at 145–46, 149–50 (citations omitted).

Persons "in the public eye," *id.* at 145, are those "who, by their accomplishments, mode of living, professional standing or calling, create a legitimate

---

[3] Section 425.16(e)(3) applies to communications on a matter of public interest in a "place open to the public or a public forum," which includes websites. *Barrett v. Rosenthal*, 40 Cal.4th 33, 41 n.4 (2006) ("Web sites accessible to the public … are 'public forums' for purposes of the anti-SLAPP statute"). Section 425.16(e)(4) does not include a "public forum" requirement.

and widespread attention to their activities," *Stewart v. Rolling Stone LLC*, 181 Cal.App.4th 664, 677–78 (2010). Whether a person is in the public eye or a public figure is a question to be decided by the Court. *Weingarten v. Block*, 102 Cal.App.3d 129, 134–35 (1980).

Plaintiff is "in the public eye" for two reasons. First, Plaintiff became famous over 15 years ago as the "flu shot cheerleader" who purportedly had a highly unusual reaction to a seasonal flu vaccine. Exs. 3–32. She claims that she was "dragged" into the spotlight, FAC ¶ 55, but she also actively participated in many media interviews on the subject in 2009, including with *Inside Edition*, *id.* ¶ 84, Exs. 3–16, 24–26, 30–32; she disseminated her own content, Exs. 30-32; she participated in *Inside Edition*'s follow-up report in 2010, FAC ¶ 38, Exs. A, 1–2; she did more interviews with other media outlets in 2022–23, FAC ¶ 55, Exs. 42, 44–47; she was the subject of third-party attention in 2024–25, FAC ¶¶ 43–46 (at 21–23), before she reached out again to Defendants, Exs. B, C; and then she intentionally attracted attention to her lawsuit on websites and social media, Exs. 50–55. She became, at a minimum, a limited purpose public figure on the subject of her alleged reaction to a flu vaccine. *See Ampex Corp. v. Cargle*, 128 Cal.App.4th 1569, 1577–78 (2005) ("The limited purpose public figure is an individual who voluntarily injects him or herself or is drawn into a specific public controversy, thereby becoming a public figure on a limited range of issues.").

Second, Plaintiff is a public figure because she is a candidate for Mayor of Los Angeles. Ex. B at 60; *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 273-74 (1971) (candidates for public office are public figures, and "'anything which might touch on an official's fitness for office is relevant. Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the official's private character.'").

Additionally, the challenged speech here relates to a topic of ongoing "controversy, dispute or discussion," *FilmOn.com*, 7 Cal.5th at 145, which is meant

to be construed "broadly," *Cross v. Cooper*, 197 Cal.App.4th 357, 383 (2011). The safety and efficacy of vaccines have been topics of nationwide controversy, dispute and discussion for decades. *See, e.g., Sexton v. Apple Studios LLC*, 110 Cal.App.5th 183, 195-98 (2025) (summarizing the history of "[c]ontroversies over vaccines"). Here, this is evidenced, *inter alia*, by the media attention attracted by Plaintiff, Exs. 3–46.

With respect to the second part of the *FilmOn* analysis—the "functional relationship"—the "inquiry does not turn on a normative evaluation of the substance of the speech," and it is not "the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction" that matters; "rather," what matters is "whether a defendant … participated in, or furthered, the discourse that makes an issue one of public interest." *FilmOn*, 7 Cal.5th at 149, 151. At this step, courts often consider the "context—including audience, speaker, and purpose." *Id.* at 152.

Here, the speaker was the news program *Inside Edition*, and its audience was nationwide via television and the internet. FAC ¶ 29, Exs. 1–2. The February 2010 Report was a follow-up report about Plaintiff. FAC ¶ 84, Ex. A. It participated in and furthered the discourse as to Plaintiff's affliction, raising questions about whether the flu shot really had caused Plaintiff lasting damage, or perhaps any damage at all. *Id.* & Exs. 15–23. Plaintiff contends that the February 2010 Report called into question her integrity and trustworthiness, FAC ¶¶ 1, 81, 84; and, although her mayoral run was many years down the road, those are legitimate qualities for voters' consideration today, *see Monitor Patriot*, 401 U.S. at 273–74.

Defendants easily satisfy the first step in the anti-SLAPP analysis.

## IV. PLAINTIFF CANNOT DEMONSTRATE A PROBABILITY OF PREVAILING ON HER STATE LAW CLAIMS

"If the defendant meets its burden [at step one of the anti-SLAPP analysis], the burden shifts to plaintiff to demonstrate a probability of prevailing on the merits of

each of plaintiff's claims" that fall within the anti-SLAPP statute's ambit. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013). Plaintiff cannot satisfy this burden for multiple independent reasons, and thus each of the State Law Claims fail.

**A. Plaintiff's State Law Claims Are All Time-Barred**

Plaintiff filed her Complaint on May 7, 2025, which was too late for each claim. California has a one-year statute of limitations for defamation and false light claims. C.C.P. § 340(c); *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169 (9th Cir. 2011). The Section 3344, IIED and negligent supervision/hiring/retention claims are subject to two-year limitations periods. C.C.P. § 335.1. Claims under the Unruh Act are subject to varying statutes of limitations, but none more than three years. *See Birdwell v. Avalon Bay Communities, Inc.*, 742 F.Supp.3d 1024, 1052 (N.D. Cal. 2024) (applying three-year limit to disability discrimination claim under Unruh Act). Untimely claims are properly stricken under the anti-SLAPP statute. *Roberts,* 660 F.3d at 1169; *Traditional Cat Assn., Inc. v. Gilbreath*, 118 Cal.App.4th 392, 404-05 (2004).

Under the single publication rule, Civil Code § 3425.3, tort claims accrue when the underlying material is *first* publicly disseminated, *Long v. Walt Disney Co.*, 116 Cal.App.4th 868, 870, 874 (2004), "*regardless* of when the plaintiff secured a copy or became aware of the publication," *Shively v. Bozanich*, 31 Cal.4th 1230, 1245-46 (2003) (original emphasis).[4] As a result, "[c]ourts uniformly have *rejected* the application of the discovery rule" to claims subject to the single publication rule because "application of the discovery rule would undermine the protection provided by the single-publication rule." *Id.* at 1250 (original emphasis). Courts likewise reject the proposition that a "cause of action arose continuously" because it was on the internet. *Traditional Cat*, 118 Cal.App.4th at 397-405; *accord Roberts*, 660 F.3d at

[4] California courts also apply the principle embodied by the single publication rule to non-tort claims if such claims are premised on a defendant's public dissemination of an expressive work. *See e.g., NBCUniversal Media, LLC v. Superior Ct.*, 225 Cal.App.4th 1222, 1234–35 (2014).

1168-69 (same).

The State Law Claims are all based on publication of the February 2010 Report, *see* FAC ¶¶ 81, 84, 86–88, 92, 96–98, 104–05, 118–20, and are all time-barred based on the face of the FAC. Plaintiff repeatedly acknowledges that Defendants published the component parts of the February 2010 Report in 2010. *See, e.g.,* FAC ¶ 27 ("broadcast" and "2010 segment aired by Inside Edition" has allegedly harmed Plaintiff "[f]or nearly twenty years"), ¶ 49 (at 23) (accusing Defendants of "16 years of public abuse"), ¶ 50 ("the February 4, 2010 broadcast [is] at the center of this case"). Plaintiff's defamation claim, FAC ¶ 84, copies text from Exhibit A to her FAC, at 49, both of which show under the byline that the report was "First Published: 4:00 PM PST, February 3, 2010," and "Updated: 12:00 AM PST, February 4, 2010." Each of the subsequent State Law Claims refers back to the same publication and its allegedly "false" and "defamatory" contents. *See* FAC ¶¶ 86, 88, 92, 97–98, 104–05, 118–20. In Exhibit B to the FAC, Plaintiff acknowledged that the accompanying press release was "published" on "February 4, 2010," and further acknowledged that "this publication may fall outside the statute of limitations for legal action." Ex. B at 60.

There is no allegation that Defendants *actually* altered or republished the February 2010 Report in the past 15 years. *See generally* FAC.[5] The FAC suggests that the *removal* of aspects of the February 2010 Report (the video and press release) from webpages (which Plaintiff requested), FAC ¶¶ 32, 47 (at 23), 50, 51, somehow constituted an alteration that restarted the statute of limitations, *id.* ¶ 53. There is no legal support for Plaintiff's novel theory, and it would run contrary to the single publication rule, and the rulings in *Roberts* and *Traditional Cat* that *maintaining* material on a website does *not* constitute republication or toll the statute of limitations. Also, permitting liability for *removing* allegedly defamatory material

[5] To be clear, Defendants did not alter or republish the February 2010 Report in the past 15 years, and any allegation to the contrary would violate Rule 11.

makes no sense particularly where liability cannot be applied for the decision *not* to retract a statement. *See D.A.R.E. America v. Rolling Stone Magazine*, 101 F.Supp.2d 1270, 1287 (C.D. Cal. 2000) ("There is no authority to support Plaintiffs' argument that a publisher may be liable for defamation because it fails to retract a statement[.]").

Nor is there any support for Plaintiff's novel legal theory that Defendants' purported "continued allowance" of alleged *third-party infringements* of copyrighted material somehow restarted the statute of limitations for Defendants' publications. FAC ¶ 53, Ex. C. To hold otherwise would subject any publishing defendant to continuing liability for internet publications contrary to the rule in *Roberts* and *Traditional Cat*, *as well as* renewed liability even where a republication is made by a third party without permission. *Cf. DiGiorgio Corp. v. Valley Labor Citizen*, 260 Cal.App.2d 268, 274 (1968) (republication by a third party does not restart the time to demand a retraction from original publisher).[6]

**B. Plaintiff's Defamation, False Light And IIED Claims Are Also Barred Because She Cannot Establish Any Recoverable Damages**

Under California's retraction demand statute, Civil Code § 48a, a plaintiff who sues a publisher may "*only* recover special damages" *unless* the plaintiff timely "serve[s] upon the … publisher … or broadcaster ... a written notice specifying the statements claimed to be libelous and demanding" that the same "be corrected … within 20 days … ." Civ. C. § 48a(a) (emphasis added).[7] Unless the plaintiff "plead[s]" that he properly and timely "requested a retraction or correction and his request was ignored," he may not recover "general or punitive damages." *DiGiorgio Corp.*, 260 Cal.App.2d at 274.

---

[6] That is especially true here because Plaintiff concedes that the platforms on which the third parties are allegedly publishing (Instagram and TikTok) *did not exist* at the time the February 2010 Report was published, FAC ¶ 47 (at 20).

[7] Civil Code § 48a applies to television programs and IIED claims, *Kalpoe v. Super. Ct.*, 222 Cal.App.4th 206, 209, 217 (2013), as well as false light claims, *Fellows v. Nat'l Enquirer, Inc.*, 42 Cal.3d 234, 240–41 (1986).

Plaintiff's Retraction Demand was not sent within the requisite 20 days; rather, it was sent on April 18, 2025, over 15 *years* after the February 2010 Report was published. FAC ¶ 52; Ex. C. Thus, the demand was late, and Plaintiff is limited to special damages, which "must be pled … precisely," *Gomes v. Fried*, 136 Cal.App.3d 924, 940 (1982), "specially," *Anschutz Enter. Grp., Inc. v. Snepp*, 171 Cal.App.4th 598, 643 (2009), and "with particularity," *Peabody v. Barham*, 52 Cal.App.2d 581, 585 (1942), *overruled on other grounds*, 52 Cal.2d 536 (1952). A "general allegation of loss of a prospective employment, sale, or profit will not suffice," *Pridonoff v. Balokovich*, 36 Cal.2d 788, 792 (1951); rather, Plaintiff "must allege the specific manner in which he lost business as a result of the defamation," *Gang v. Hughes*, 111 F.Supp. 27, 29 (S.D. Cal. 1953). Here, the body of the FAC speculates that Plaintiff may have lost employment opportunities in "January 2024," FAC ¶¶ 61–62, nearly 14 years *after* the original reporting and six months *before* third parties allegedly republished Defendants' material on social media, *id.* ¶ 43 (at 21), but that is nowhere near the specificity required under pertinent case law.

Furthermore, Plaintiff does not allege that she directed her letter to a proper recipient pursuant to Civil Code § 48a(a), and instead merely claims that she sent her letter to "media contacts for the Inside Edition show" and "served Defendants." FAC ¶¶ 47 (at 23), 52; *Bauer v. Athletic Media Co.*, 2022 WL 18586268 at *4–7 (C.D. Cal. Dec. 5, 2022) (plaintiff must adequately allege service under Civil Code § 48a(a)).

Because Plaintiff is statutorily barred from recovering general, actual or punitive damages, and she has not adequately pleaded special damages, she has no recoverable damages on her defamation, false light and IIED claims. Damages, however, are an essential element to those claims. *Gomes,* 136 Cal.App.3d at 940-41 (where plaintiff cannot recover any damages on defamation claim, plaintiff cannot prevail); CACI 1600, 1802 (same for IIED and false light). Plaintiff's inability to recover damages is another reason she cannot prevail on those claims.

### C. Plaintiff's Defamation Claim Fails for Additional Reasons

#### 1. Plaintiff Does Not Identify Any Allegedly False Statements

"[S]tatements alleged to constitute libel must be specifically identified, if not pleaded verbatim, in the complaint." *Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal.App.5th 869, 893 (2020). And Plaintiff has the burden to show that such allegedly defamatory statements were false. *Nizam-Aldine v. City of Oakland*, 47 Cal.App.4th 364, 373–74 (1996) (plaintiff has burden to prove falsity on matters of public concern). Here, Plaintiff points to a paragraph in the February 2010 Report, but does not actually identify any false statements therein. *See* FAC ¶ 84. For example, *nowhere* does Plaintiff allege that it was false that "INSIDE EDITION cameras found her walking normally, playing with her dogs, going shopping, even getting behind the wheel of a car and driving!" *Id.*

#### 2. The Purported Implications Are Not Reasonable

Instead of identifying any false statements, Plaintiff claims that the February 2010 Report falsely implies that she fabricated her symptoms, was untrustworthy, or was mentally unstable. FAC ¶¶ 1, 81, 84. Where a statement is not expressly set forth, courts set a very high standard for finding defamatory implications, and will reject purported implications if they are not reasonable as a matter of law.[8] *See Eliott v. Lions Gate Ent. Corp.*, 639 F.Supp.3d 1012, 1016 (C.D. Cal. 2022) (cleaned up; emphasis in original).

The February 2010 Report raises questions, but does not imply that Plaintiff was lying or is mentally unstable. It recites the prior reporting from October 2009 about Plaintiff's symptoms, her concern that she would "never find a cure," and how she "contributed to the flu scare." Ex. A at 49; Ex. 1. Then it revealed that Plaintiff

[8] For example, in *Forsher v. Bugliosi*, the court held, as a matter of law, that a book "neither expressly nor by fair implication charges [the plaintiff] with killing or aiding or abetting the killing" of a murder victim—even though the book repeatedly identified the plaintiff and linked him to the murder—and held that courts "must … refrain from scrutinizing what is not said to find 'a defamatory meaning which the article does not convey to a lay reader.'" 26 Cal.3d 792, 796–803 (1980).

seemed to be leading a normal life, and asked a series of questions: "Is she cured? … So what happened? Did Desiree Jennings really suffer a one-in-a-million reaction to the seasonal flu shot, as she says, or is it all some kind of elaborate hoax? Or is it something else entirely? … So how does she explain her recovery?" *Id.* at 49–51. The February 2010 Report compares a government report positing a "psychogenic component" and a skeptical assessment from an Assistant Professor against Plaintiff's first-hand accounts and "a report from a doctor who also believes her symptoms were vaccination-induced." *Id.* at 49–52. The February 2010 Report takes an inquisitive approach and conveys competing positions, but it is not reasonably implying that Plaintiff is a liar or mentally unstable.

**3. Even If They Were Reasonable, The Purported Implications Are Constitutionally Protected Speech**

Statements that "cannot reasonably be interpreted as stating actual facts about an individual" are not actionable. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (cleaned up). Rhetoric, figurative language, and subjective impressions are constitutionally protected. *Greenbelt Publ. Assn. v. Bresler*, 398 U.S. 6, 14 (1970). Whether an allegedly defamatory statement is an actionable statement of fact is a question of law. *Info. Control Corp. v. Genesis One Comput. Corp.*, 611 F.2d 781, 783 (9th Cir. 1980).

The Ninth Circuit examines three aspects to determine whether a statement is verifiable and actionable: (1) the "broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work;" (2) the "specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation"; and (3) "whether the statement itself is sufficiently factual to be susceptible of being proved true or false." *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995). If a "reasonable factfinder" could not conclude that the contested statement "implies an assertion of objective

fact" then the defamation claim "is foreclosed by the First Amendment." *Herring Networks*, 8 F.4th at 1153, 1157 (granting Rule 12 anti-SLAPP motion where the defendants' broadcast stated that the plaintiff news outlet "really literally [was] paid Russian propaganda"). Under this strict test, Plaintiff's defamation claim is barred.

The broad and specific contexts favor a finding of non-actionability. The February 2010 Report used exclamation points and took an investigative stance. Ex. A. The use of "epithets, fiery rhetoric or hyperbole," and "colorful commentary," even on a news show, supports a finding of non-actionability, and "negates the impression that [the speaker] implied a false assertion of fact." *Herring Networks*, 8 F.4th at 1157–58 (cleaned up). Courts look at the language to help discern whether the specific context for the publication is "figurative or hyperbolic." *Underwager*, 69 F.3d at 367. The February 2010 Report is a follow-up report on Plaintiff's condition which, in 2009, "created a national uproar." Ex. A at 49. "Loose, figurative [and] hyperbolic" language supports the conclusion that a statement is constitutionally protected. *Milkovich*, 497 U.S. at 21. The reporting raised multiple questions about Plaintiff's symptoms, recovery and condition, reinforcing a context that is nonactionable. Ex. A; *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993) ("inquiry itself, however embarrassing or unpleasant to its subject, is not accusation"); *Thomas v. Los Angeles Times Commc'ns LLC*, 189 F.Supp.2d 1005, 1016 (C.D. Cal. 2002) (endorsing *Chapin*'s rule that "raising of questions" is not actionable). The reporting presented alternative theories, including Plaintiff's first-hand perspectives, and concluded with a summary of a doctor's report supporting Plaintiff's position. Ex. A; *Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995) ("'[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.'"). All of this points to non-actionability.

Even if the purported implications were actually stated, calling someone a liar or mentally unstable in the context of presenting competing perspectives, is protected speech. In *Underwager*, the defendant directly accused the plaintiff of "lying" to a court, but the Ninth Circuit held that the plaintiff "failed to show that the statement implie[d] a verifiable assertion of perjury." 69 F.3d at 367. The court noted that "the term 'lying' applies to a spectrum of untruths including 'white lies,' 'partial truths,' 'misinterpretation,' and 'deception.'" *Id.* Similarly, even a direct statement that Plaintiff is mentally unstable—which Defendants never made—would not be actionable in context. *See Lieberman v. Fieger*, 338 F.3d 1076, 1080 (9th Cir. 2003) (reference to plaintiff as "mentally unbalanced" was nonverifiable and protected hyperbole when recounting a controversial debate).

**4. Even If Verifiable, No Statements Were False**

Assuming *arguendo* that the February 2010 Report contained verifiable statements of fact, Plaintiff would have the burden to show falsity, *see Nizam-Aldine*, 47 Cal.App.4th at 373–74, which she cannot show because the Court of Federal Claims, Office of Special Masters (the "Vaccine Court"), held—after nearly eight years of litigation in a detailed 236-page decision—that: (1) Plaintiff did *not* have dystonia; (2) Plaintiff's symptoms were attributable to conversion disorder (a mental disorder with no demonstrable physiological basis); and (3) Plaintiff's symptoms were not caused by the flu vaccine. Ex. 41 at 233–35.

**5. Plaintiff Failed to Adequately Plead Actual Malice**

Public figures like Plaintiff, *see* Section III.C, *supra*, must adequately plead actual malice—*i.e.,* knowledge of falsity or reckless disregard for the truth—"with specificity." *Nicosia v. DeRooy*, 72 F.Supp.2d 1093, 1109-10 (N.D. Cal. 1999) (failure to plead actual malice "with specificity" warrants dismissal under anti-SLAPP statute with prejudice); *Vogel v. Felice*, 127 Cal.App.4th 1006, 1017-18

(2005).[9] Here, Plaintiff mentions only in boilerplate allegations that Defendants acted with actual malice, FAC ¶¶ 1, 81, but she does not plead any specific facts to support that proposition. *Nicosia*, 72 F.Supp.2d at 1109 ("conclusory statements that [defendant] should have known the truth does not satisfy the heightened pleading standard"). Plaintiff's defamation claim fails for this additional, constitutionally-based reason.

### D. Plaintiff's Ancillary State Law Claims Are Also Barred

#### 1. The Ancillary State Law Claims Are Superfluous

When "claims for invasion of privacy and emotional distress are based on the same factual allegations as those of a simultaneous libel claim, they are superfluous and *must be dismissed*." *Couch v. San Juan Unif. Sch. Dist.*, 33 Cal.App.4th 1491, 1504 (1995) (emphasis added); *see also Rudwall v. BlackRock, Inc.*, 289 Fed. Appx. 240, 241 (9th Cir. 2008) (same, quoting *Couch*). In *Couch*, the court dismissed false light and emotional distress claims that were based on the same allegedly tortious conduct as a simultaneous defamation claim. 33 Cal.App.4th at 1504. In *Seelig v. Infinity Broad. Corp.*, 97 Cal.App.4th 798, 806, 812 (2002), claims for invasion of privacy, negligent hiring, retention and supervision, and IIED that were based on the same facts as a failed defamation claim, should have been stricken under Section 425.16. Here, Plaintiff's false light, IIED, Section 3344, Unruh Act and negligent supervision claims are based on the same underlying facts as her defamation claims targeting Defendants' purportedly "false" and "defamatory" speech. *Compare* FAC ¶¶ 80-84 *with id.* ¶¶ 47 (at 23), 85-90, 91-92, 95, 98, 100, 104-106, 120. Plaintiff's ancillary claims are superfluous, and must be dismissed.

---

[9] "Every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." *Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) (cleaned up and collecting cases).

### 2. The Ancillary State Law Claims Fail for the Same Reasons the Defamation Claim Fails

Even if the ancillary State Law Claims were not subject to dismissal for superfluousness, the First Amendment circumscribes "*all* claims whose gravamen is the alleged injurious falsehood of a statement." *Blatty v. New York Times Co.*, 42 Cal.3d 1033, 1042–43 (1986) (emphasis added). Plaintiff cannot avoid the strictures of defamation law by pleading alternative causes of action. "The collapse of [the] defamation claim *spells the demise of all other causes of action*" in the same complaint "which allegedly arise from the same publication." *Gilbert v. Sykes*, 147 Cal.App.4th 13, 34 (2007) (emphasis added) (dismissing defamation and IIED claims); *see also Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1183, 1186-89 (9th Cir. 2001) (applying constitutional actual malice standard to Section 3344 claim); *Eliott*, 639 F.Supp.3d at 1029 (dismissing false light and IIED claims that were "equal to [plaintiff's] defamation claims"); *Seelig*, 97 Cal.App.4th at 812 (dismissing privacy, negligent hiring and IIED claims). This is because, "liability cannot be imposed on any theory for what has been determined to be a constitutionally protected publication." *Reader's Digest Assn. v. Super. Ct.*, 37 Cal.3d 244, 265 (1984) (dismissing defamation, false light and IIED claims on same grounds).

### 3. The Section 3344 Claim Fails for Three Additional Reasons

First, Section 3344 contains an important exception foreclosing liability for reports on "public affairs." Civ. C. § 3344(d); *Montana v. San Jose Mercury News, Inc.*, 34 Cal.App.4th 790, 793 (1995) (Section 3344(d) "exempts from liability the use of a name or likeness in connection with the reporting of a matter in the public interest"). Section 3344(d)'s "public affairs" exception is given wide latitude to protect what "'the public is interested in and constitutionally entitled to know about,'" such as "'things, people, and events that affect it.'" *Baugh v. CBS, Inc.*, 828 F.Supp. 745, 754 (N.D. Cal. 1993). For example, courts applied the exemption to a

documentary television series on gangs in *Gangland*, 730 F.3d at 960–61, and a documentary on surfing in *Dora v. Frontline Video, Inc.*, 15 Cal.App.4th 536, 544-45 (1993). Here, the February 2010 Report is protected speech on matters of public interest and public affairs. *See* Section III.C, *supra*.

Second, Plaintiff's Section 3344 claim also fails because she does not plead a "*direct connection* between the use of [her] name or likeness and a *commercial* purpose." *Polydoros v. Twentieth Cent. Fox Film Corp.*, 67 Cal.App.4th 318, 322 (1997) (emphasis in original). Claims for misappropriation of likeness will not stand in California unless the likeness was used "*exclusively* for … commercial gain." *Leidholt v. L.F.P., Inc.*, 860 F.2d 890, 895 (9th Cir. 1988) (emphasis added); *see also Hoffman,* 255 F.3d at 1185 (only "clearly commercial speech" that "'does no more than propose a commercial transaction'" supports a Section 3344 claim); *Brewer v. Hustler Magazine, Inc.*, 749 F.2d 527, 530 (9th Cir. 1984) (Section 3344 "is limited to appropriation for purposes of advertising or solicitation of purchases"). Expressive material like the February 2010 Report does not lose its heightened protection if it is sold for a profit. *See, e.g., Leidholt*, 860 F.2d at 895 ("the fact that [a magazine] is operated for profit does not extend a commercial purpose to every article within it"). Plaintiff alleges that her Section 3344 claim against Defendants is based on "a nationally broadcast segment that originally aired in 2010," FAC ¶ 97, which investigated, analyzed, opined and reported on matters of public interest—it was not produced exclusively for commercial gain and it did not merely propose a commercial transaction.

Third, to the extent that the Section 3344 claim is based on third party republication of the February 2010 Report or portions thereof, Plaintiff does not plead that Defendants knew such material would be published by third parties on platforms that did not exist in 2010. FAC ¶¶ 47 (at 20), 97; Civ. C. § 3344(a) (requiring "knowing" use).

**4. The Unruh Act Claim Is Barred by the First Amendment**

Plaintiff's Unruh Act claim is barred by the free speech and free press guarantees in the federal and state Constitutions. U.S. Const., amend. I, XIV; Cal Const., art. I, § 2. In *Ingels v. Westwood One Broad. Svcs., Inc.*, the court applied the anti-SLAPP statute to bar an Unruh Act age discrimination claim when the plaintiff challenged defendant's choice of content for a radio talk show. 129 Cal.App.4th 1050, 1072-74 (2005); *see also U.S. Western Falun Dafa Assn. v. Chinese Chamber of Commerce*, 163 Cal.App.4th 590, 606 (2008) (dismissing Unruh Act claim under anti-SLAPP statute, and holding that defendant had a constitutional right to exclude plaintiff from expressing its views at defendant's fair). The *Ingels* court made clear that publishers and broadcasters have a constitutional right to make editorial choices. 129 Cal.App.4th at 1072-74 (citing, *e.g., Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (holding that newspapers have a First Amendment right *not* to publish material)). This rule was recently reaffirmed in the internet context. *Moody v. NetChoice, LLC*, 603 U.S. 707, 728 (2024) (collecting and summarizing cases).

Here, Plaintiff's Unruh Act claim is based on her contention that Defendants were required to present what she considers to be an accurate recital of her story. FAC ¶¶ 47 (at p.23), 104-106. Such a claim is constitutionally barred.

**E. Portions of Plaintiff's State Law Claims Are Barred for Other Reasons**

The Court may strike *portions* of claims under Section 425.16. *City of Colton v. Singletary*, 206 Cal.App.4th 751, 774 (2012).

**1. To the Extent the State Law Claims Are Based on Third Party Content, They Must Be Stricken**

Plaintiff repeatedly suggests that Defendants should be held responsible for third party content that steps beyond the February 2010 Report. *See, e.g.,* FAC ¶¶ 43–46 (at 21–23), 55, 82 (alleging harm from third parties' "amplify[ing]" allegedly defamatory material). First, Defendants cannot be held responsible for content they

did not create or publish. *See, e.g., Wong v. Jing*, 189 Cal.App.4th 1354, 1369 (2010) (publication is an element of defamation). Second, to the extent Plaintiff's State Law Claims are based on online content generated by third parties, they are all barred under 47 U.S.C. § 230(c)(1), which provides absolute immunity from suit for state law claims based on online content created by "another content provider"—*i.e.*, a third party. *Barrett*, 40 Cal.4th at 58-62.

### 2. The State Law Claims Are Barred to the Extent They Are Based on Communications from Defendants' Counsel

Plaintiff also suggests liability based on Defendants' counsel's communications, FAC ¶¶ 67, 80, but the litigation privilege embodied in Civil Code § 47(b) provides "absolute immun[ity]" from liability for "communications with 'some relation' to judicial proceedings." *Rubin v. Green*, 4 Cal.4th 1187, 1193 (1993); *Pacific Gas & Elect. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1132 (1990) ("the litigation privilege extends beyond claims of defamation to … any action except one for malicious prosecution."). And the privilege extends beyond court filings to "prelitigation communications by attorneys," *Blanchard v. DIRECTV, Inc.*, 123 Cal.App.4th 903, 919 (2004). The litigation privilege bars any claim here to the extent it is based on communications from Defendants' counsel.

## V. CONCLUSION

Defendants respectfully request that the Court grant their Motion in full.

Dated: September 12, 2025

JASSY VICK CAROLAN LLP

By: */s/ Jean-Paul Jassy*
Jean-Paul Jassy

Counsel for Defendants
Paramount Global, CBS Broadcasting Inc., Inside Edition Inc.

**DECLARATION IN COMPLIANCE WITH L.R. 7-3**

I declare that on July 22, 2025, counsel for Defendants and Plaintiff conferred for approximately 30 minutes by telephone to discuss the issues and positions raised in this Motion and attempted in good faith to resolve the Motion in whole or in part. Although the First Amended Complaint ("FAC") had not yet been filed, Plaintiff shared a draft of the FAC with Defendants' counsel on July 20, 2025, in advance of the July 22, 2025, teleconference. Plaintiff filed and formally served her FAC on July 25, 2025. Counsel for Defendants also sent Plaintiff a follow-up email on August 29, 2025, to address an additional argument regarding substantial truth that Defendants intended to add to their motion. Thereafter, counsel for Defendants and Plaintiff had another teleconference on September 3, 2025, to discuss the Motion, and specifically the additional argument regarding substantial truth. Plaintiff declined to dismiss any of her state law claims, proceeded to file her FAC with the new seventh claim, and did not withdraw or dismiss any part of her FAC in response to Defendants' counsel's communications and explanations about the Motion. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 12, 2025

JASSY VICK CAROLAN LLP

By: *____/s/ Jean-Paul Jassy___*
Jean-Paul Jassy

Counsel for Defendants
Paramount Global, CBS Broadcasting Inc., Inside Edition Inc.

# CERTIFICATION OF COMPLIANCE WITH L.R. 11-6.2

The undersigned, counsel of record for Defendants Paramount Global, CBS Broadcasting Inc., and Inside Edition Inc., certifies that the foregoing memorandum of points and authorities contains 6,996 words (excluding the caption, table of contents, table of authorities, signature block, the certification of compliance with L.R. 7-3, and this certification), which complies with the word limit of L.R. 11-6.1.

Dated: September 12, 2025

JASSY VICK CAROLAN LLP

By: *_/s/ Jean-Paul Jassy_*
Jean-Paul Jassy

Counsel for Defendants
Paramount Global, CBS Broadcasting Inc., Inside Edition Inc.