UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING DEFENDANTS' SPECIAL MOTION TO STRIKE [14] AND MOTION TO DISMISS [15]**

Before the Court is Defendants' Special Motion to Strike First Amended Complaint Under California Code of Civil Procedure § 425.16 ("Anti-SLAPP Motion") (ECF 14) and Defendants' Motion to Dismiss Sixth Claim for Relief from First Amended Complaint ("Motion to Dismiss") (ECF 15). The Court read and considered the moving, opposing, and reply papers and held a hearing on October 27, 2025. For the reasons stated herein, the Court **GRANTS** the Anti-SLAPP Motion **with leave to amend** and **GRANTS** the Motion to Dismiss **without leave to amend**.

I.     **BACKGROUND**

   A.     **Factual Background**

Plaintiff Desiree Guerriere Townsend ("Plaintiff"), proceeding pro se, filed this action against Paramount Global ("Paramount"), CBS Broadcasting Inc. ("CBS"), and Inside Edition Inc. ("Inside Edition") (collectively "Defendants") on May 7, 2025. ECF 1. Plaintiff filed the operative First Amended Complaint on July 25, 2025. ECF 12. This lawsuit arises out of an allegedly deceptive and defamatory broadcast segment about Plaintiff produced and distributed by Defendants. *Id.* ¶ 1.

Defendant Inside Edition produces the nationally syndicated television program *Inside Edition*. *Id.* ¶ 17. Inside Edition is a subsidiary of CBS Media Ventures, which is a division of Paramount. *Id.*

In October 2009, Plaintiff became the subject of media attention stemming from her contention that she developed a rare neurological disorder after receiving the flu vaccine. *Id.* ¶ 3, Ex. A. Around that time, Plaintiff participated in an interview with Inside Edition, during which Plaintiff stated that "the [flu] shot caused the neurologic damage" she was then experiencing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

ECF 16-9. The Inside Edition article from October 2009 reported that Plaintiff experienced various symptoms including the inability to walk forward, difficulty speaking, convulsions, and exhaustion. *Id.*

In or around January 2010, employees of Inside Edition secretly filmed Plaintiff in public while Plaintiff was under the ongoing care of a licensed neurologist. *Id.* ¶ 37. Plaintiff then gave a voluntary interview to Inside Edition at her home, during which she provided Inside Edition with medical documentation and explained the "medication-related improvements in her disability." *Id.* ¶ 38.

On February 4, 2010, Inside Edition published the allegedly defamatory segment which, according to Plaintiff, was laced with "innuendo and insinuation" that she was feigning illness ("the 2010 Report"). *Id.* ¶¶ 39–40. The 2010 Report contained statements from an unidentified neurologist who purportedly stated that there was a "psychogenic" (*i.e.*, a mental or psychological) component to Plaintiff's symptoms. *Id.* ¶ 41. The broadcast referenced a report that Plaintiff showed to Inside Edition, which was from a doctor "who also believe[d] Plaintiff's symptoms were vaccination-induced." *Id.* ¶ 42. The 2010 Report consisted of a press release, a written article, and a video segment that aired on a television broadcast and was later viewable on Defendants' digital platforms. *Id.* ¶ 28.

The written article, which is attached to Plaintiff's First Amended Complaint, stated that Inside Edition "cameras found [Plaintiff] walking normally, playing with her dogs, going shopping, even getting behind the wheel of a car and driving." ECF 12 at 49. The article goes on to say that "[i]t is hard to believe the woman INSIDE EDITION producers have been discretely observing over the last few weeks is the same woman who contributed to the flu shot scare." *Id.* When the Inside Edition reporter suggested to Plaintiff that her condition may be "psychogenic" or a "hoax," Plaintiff stated that "[p]eople are free to believe whatever they want but clearly what I've been going through, I know it's not psychogenic and it's not a hoax." *Id.* at 51.

On or about March 10, 2025, Plaintiff discovered that actor and *Access Hollywood* host Mario Lopez republished the video segment of the 2010 Report on Instagram. *Id.* ¶ 43. This post "triggered a wave of public ridicule and reputational harm to Plaintiff in 2024." *Id.* Lopez's conduct is the subject of a lawsuit filed by Plaintiff in Los Angeles Superior Court. *Townsend v. Lopez*, Los Angeles Superior Court Case No. 25NNCV04089. After seeing Lopez's Instagram post, Plaintiff conducted a Google search of her own name, and she discovered the press release associated with the 2010 report remained publicly accessible. ECF 12 ¶ 46.

On April 10, 2025, Plaintiff emailed media contacts for Inside Edition, asking that the press release be removed from public view to prevent further reputational and emotional damage. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

¶ 47, Ex. B. Plaintiff's email acknowledged that "this publication may fall outside the statute of limitations for legal action" but requested that the release be removed because it is "deeply harmful and misleading . . . particularly as [Plaintiff] prepare[s] to enter public service with a campaign for Mayor of Los Angeles." *Id.* Ex. B. On April 14, 2025, Bettina Cataldi replied to Plaintiff, stating that Defendants "remov[ed] the press release from our website" as a courtesy. *Id.*

Plaintiff sent another email to Cataldi on April 15, 2025, explaining that she has "gone viral again on TikTok," with thousands of users leaving hateful, derogatory, and even threatening comments toward her. *Id.* Plaintiff requested that she be connected with a producer or journalist from Inside Edition to "revisit[]" the 2010 report "in the spirit of transparency and accountability." *Id.* Plaintiff sent another email on April 16, 2025, again asking to be put in touch with a journalist or news organization. *Id.* Cataldi replied on April 17, 2025, stating "[t]his video does not appear on our digital platforms," and Defendants "do not have the ability to police the behavior of people on online platforms we do not control." *Id.*

On April 18, 2025, Plaintiff sent Defendants correspondence titled "Formal Retraction Demand Pursuant to California Civil Code § 48a." *Id.* Ex. C. In that letter, Plaintiff stated that "your organization has failed to issue any clarification, correction, or update to the public record." *Id.* Plaintiff demanded that CBS and Inside Edition retract the original segment, publish a correction, and file takedown requests with various social media platforms. *Id.* Defendants' counsel responded to Plaintiff on April 25, 2025, declining to take the measures demanded by Plaintiff. *Id.* Ex. D.

### B. Procedural History

Plaintiff filed the operative First Amended Complaint ("FAC") on July 25, 2025, asserting claims for (1) defamation, (2) false light invasion of privacy, (3) intentional infliction of emotional distress, (4) violation of California Civil Code § 3344, (5) violation of the California Unruh Civil Rights Act, (6) violations of the Americans With Disabilities Act, and (7) negligent supervision, hiring, and retention. ECF 12.

On September 12, 2025, Defendants filed a Motion to Strike the FAC Under California Code of Civil Procedure 425.16 ("Anti-SLAPP Motion"). ECF 14. The Anti-SLAPP Motion is specifically directed at Plaintiff's six state law claims for relief. *Id.* Defendants also filed a Motion to Dismiss the sixth cause of action. ECF 15. In support of the Motions, Defendants filed a Request for Judicial Notice. ECF 16.

Plaintiff opposed both Motions and objected to Defendants' Request for Judicial Notice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

Plaintiff also requested judicial notice of various exhibits in connection with her opposition, to which Defendants objected.

## II.   LEGAL STANDARDS

### A.   Anti-SLAPP

California's anti-SLAPP law allows a defendant to file a special motion to strike certain claims that arise "from any act of [the defendant] in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16. Although it is not a federal rule or law, the Ninth Circuit has held that "California's anti-SLAPP statute . . . supplements rather than conflicts with the Federal Rules." *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013). Therefore, the anti-SLAPP statute is applicable in federal cases premised upon diversity jurisdiction. *See United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999).

Under California law, a court deciding an anti-SLAPP motion to strike must engage in a two-step process. *See Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). First, "the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id.* Second, "[i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* That two-step process has been adopted by the Ninth Circuit. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010).

The Ninth Circuit has also explained how an anti-SLAPP motion to strike fits within the framework of the Federal Rules of Civil Procedure:

> When an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated. And, on the other hand, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply.

*Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

### B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted. "On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citing *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). In other words, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (per curiam). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

### A. Requests for Judicial Notice

Plaintiff and Defendants each request judicial notice of various documents in connection with their briefing. ECF 16; ECF 26-1; ECF 30. Each party also raises objections. ECF 26 at 18–19; ECF 31.

Federal Rule of Evidence 201 "permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)(1)–(2)). Although "'matters of public record' are proper subjects of judicial notice, a court may take notice only of the existence and authenticity of an item, not the truth of its contents." *Farrar v. Fluegge Egg Ranch 3, Inc.*, No. 20-CV-741 DMS (AHG), 2020 WL 7869455, at *3 (S.D. Cal. Dec. 31, 2020) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001)); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'").

"Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

F.3d at 1002. A document may be deemed incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).

With these principles in mind, the Court considers each category of documents identified by the parties.

    1.    *Defendants' Exhibits 1–2 (The 2010 Report)*

Defendants first ask the Court to take judicial notice of the 2010 Report, including the video segment and the webpage. ECF 16 at 3. Plaintiff does not object to the Court considering these materials. The Court finds that the 2010 Report is incorporated by reference into the FAC because it is central to Plaintiff's claims and there is no dispute about the authenticity of the versions attached to Defendants' Request. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

    2.    *Defendants' Exhibits 3–40, and 42–47 (News Articles, Web Pages, Blogs and Videos Concerning Plaintiff)*

Defendants also request "that the Court take judicial notice of the existence of the materials that are publicly available on the internet and which were published *before* the 2010 Report . . . ." ECF 16 at 4. Those materials include:

- News articles concerning Plaintiff predating the 2010 Report. ECF 16-3–ECF 16-14.

- "[W]ebpages affiliated with the anti-vaccination movement concerning Plaintiff" predating the 2010 Report. ECF 16-15–ECF 16-16.

- Medical blogs and webpages "which concern Plaintiff." ECF 16-17–ECF 16-23.

- YouTube pages concerning Plaintiff and depicting news segments featuring Plaintiff predating the 2010 Report. ECF 16-24–ECF 16-29.

- Plaintiff's self-published content predating the 2010 Report. ECF 16-30–ECF 16-32

- Webpages and articles published after 2010 concerning Plaintiff. ECF 16-33–ECF 16-36.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

- Webpages and public media materials concerning Plaintiff published between 2020 and 2024. ECF 16-42–ECF 16-47.

- Plaintiff's own websites and social media accounts. ECF 16-50–ECF 16-55.

Plaintiff does not object to the Court's taking notice of the existence of these articles and websites or the fact that they reference Plaintiff. ECF 26 at 18. Rather, Plaintiff objects to the Court taking judicial notice of Defendants' subjective interpretations or characterizations of those materials. *Id.*

The Court finds that it is appropriate to take judicial notice of Defendants' Exhibits 3 through 40 and 42 through 47 for the purpose of showing information available in the public realm at the time they were published. *See Big3 LLC v. Al-Rumaihi*, No. CV 18-3466-DMG (SKX), 2018 WL 11470406, at *1 (C.D. Cal. Nov. 29, 2018) (taking judicial notice of "certain news articles reporting on the parties and/or matters relating to the instant dispute" in connection with anti-SLAPP motion). For the avoidance of doubt, the Court does not take judicial notice of Defendants' subjective characterizations or descriptions of these articles or the truth of their contents.

   3.   ***Vaccine Court Decision***

Defendants request that the Court take judicial notice of a decision issued by the Court of Federal Claims adjudicating a claim filed by Plaintiff. ECF 16 at 9. Because the Court disposes of Defendants' Motion without reference to this document, Defendants' Request for Judicial Notice is **DENIED**.

   4.   ***Plaintiff's Request for Judicial Notice***

Plaintiff requests judicial notice of 33 exhibits. ECF 26-1. These documents include Plaintiff's Social Security Disability award letter, Plaintiff's medical records, webpages depicting negative comments, news articles and court filings related to Plaintiff's lawsuit against Mario Lopez, and various articles and press releases published by Defendants unrelated to Plaintiff. *Id.*

Defendants oppose judicial notice of the truth of the contents of Plaintiff's exhibits. ECF 31. Defendants also oppose Plaintiff's requests on other specific grounds, including authenticity and relevance. *Id.*

"An irrelevant fact cannot be classified as an adjudicative fact for purposes of Rule 201." *Waterkeeper v. Clay*, No. 18-CV-00333-DOC-DFM, 2023 WL 6787811, at *2 (C.D. Cal. Aug.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

25, 2023). Here, the Court concludes that none of Plaintiffs' proffered exhibits are germane to the issues presented by Defendants' Motion, and the Court does not rely on them in disposing of this case. Plaintiff's Request is therefore **DENIED.**

    **B.**    **Motion to Strike**

        **1.**    ***Step One: "Arising From" Protected Activity***

Step one of the anti-SLAPP analysis requires Defendants to make "a threshold showing that the challenged cause of action is one arising from protected activity." *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002). California's anti-SLAPP statute enumerates four broad categories of conduct that constitute protected activity, two of which Defendants argue apply here: "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" and "any other conduct in furtherance of the exercise of the constitutional right . . . of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(3)–(4). Defendants argue that the targeted speech—the content of the 2010 Report—was made "in connection with a public issue or an issue of public interest." ECF 14 at 18.

Courts employ a two-part analysis to determine if speech is connected with a public issue or an issue of public interest. "First, the court determines what issue the speech implicates based on the content of the speech." *Harvey v. Netflix, Inc.*, No. 2:24-CV-04744-RGK-AJR, 2024 WL 4536639, at *4 (C.D. Cal. Sept. 27, 2024) (citing *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149–50 (2019)). "Second, the court determines whether there is a functional relationship between the speech and the public conversation about the issue based on context." *Id.*

As to the first step, a topic of speech "is in the public interest under the anti-SLAPP statute where it concerns (1) a person or entity 'in the public eye'; (2) conduct that 'could directly affect a large number of people beyond the direct participants'; or (3) a 'topic of widespread, public interest.'" *Joiner v. Callaghan*, No. 8:24-CV-01160-CBM-KS, 2025 WL 659215, at *3 (C.D. Cal. Feb. 20, 2025) (citation omitted).

Defendants argue that the 2010 Report implicates an issue of public interest because Plaintiff was a "public figure" who garnered attention by participating in media interviews about her reaction to a flu vaccine, because Plaintiff is a candidate for public office, and because the challenged speech relates to vaccine safety and efficacy, a topic of ongoing controversy and discussion. ECF 14 at 19–20. Plaintiff responds that the 2010 Report did not concern a matter of public interest because the media attention on her medical condition "had dissipated" by the time it aired, and it concerned purely private facts about Plaintiff's neurological disability. ECF

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

26 at 10–11.

    The Court agrees with Defendants that the issue of vaccine safety and efficacy is a topic of widespread, public interest, and reporting on physiological symptoms experienced by individuals who received the vaccine is a subject of public concern. *See Sexton v. Apple Studios LLC*, 110 Cal. App. 5th 183, 195–96 (2025) (describing "intense and continuing" controversies over vaccines). Thus, news stories reporting that Plaintiff experienced symptoms that she attributed to a vaccine, and follow-up stories which report on the purported resolution of those symptoms, concern an issue of public interest. Moreover, the Court also agrees that when the 2010 Report was published, Plaintiff was in the "public eye" as a result of her voluntary participation in media interviews in which she discussed symptoms that she attributed to the vaccine. *See Ampex Corp. v. Cargle,* 128 Cal.App.4th 1569, 1577–78 (2005) ("The limited purpose public figure is an individual who voluntarily injects him or herself or is drawn into a specific public controversy, thereby becoming a public figure on a limited range of issues."); *see, e.g.*, ECF 16-3 (news articles from 2009 reporting on Plaintiff's condition).[1] The "media's interest" in Plaintiff, as demonstrated by the myriad news articles published in late 2009, "further reinforces the conclusion that [Plaintiff's condition] is a matter of widespread, public interest." *Big3 LLC*, 2018 WL 11470406, at *5. The Court is not aware of any authority to support Plaintiff's argument that the passage of approximately four months between when the articles reporting on her systems were published and the 2010 Report was published is sufficient to eliminate her status as a public figure.

    Having determined that the content of the 2010 Report implicates an issue of public interest, the Court must determine "whether there is a functional relationship between the speech and the public conversation about the issue based on the context." *Harvey*, 2024 WL 4536639, at *5 (citing *FilmOn.com*, 7 Cal. 5th at 149–50). "[A] court must consider whether a statement—including the identity of its speaker, for example, or the audience sought—contributes to or furthers the public conversation on an issue of public interest." *FilmOn.com Inc.*, 7 Cal. 5th at 154. Defendants argue that Inside Edition had a nationwide audience via television and the internet, and the 2010 Report "furthered the discourse as to Plaintiff's affliction, raising questions

---

[1] A California state trial court recently reached the same conclusion in Plaintiff's separate lawsuit against Lopez. ECF 25-1. In its decision, the Court recognized that the 2010 Report "was a matter of public interest at that time (in 2010), and Plaintiff appears to have continued [to] place issues related to vaccine safety into the public eye at that time." ECF 25-1 at 9. Although the state court's decision is not binding upon this Court, the Court nevertheless finds its reasoning instructive and useful in applying the anti-SLAPP statute to this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

about whether the flu shot had really caused Plaintiff lasting damage, or perhaps any damage at all." ECF 14 at 20. Plaintiff argues that putting a "private medical condition into public view" does not qualify as "participation in a public conversation." ECF 26 at 11. The Court agrees with Defendants that the 2010 Report was not a "slight reference to the broader public issue" of vaccine safety—rather, it directly contributed to the discourse by suggesting that Plaintiff no longer suffered from the symptoms Plaintiff claimed were caused by the vaccine, and it did so by publishing media articles to a national audience.

Defendants have therefore met their burden to show that the Anti-SLAPP statute applies to this lawsuit arising out of the 2010 Report.

    **2.**     **Step Two: Probability of Prevailing**

If the moving party on an anti-SLAPP motion satisfies the threshold showing on any claim, the burden shifts to the opposing party to demonstrate the merit of that claim. *Murray v. Tran*, 55 Cal. App. 5th 10, 36 (2010). Where, as here, the anti-SLAPP motion challenges only the legal sufficiency of a claim, the Court will apply the Rule 12(b)(6) standard and consider whether a claim is properly stated. *See Planned Parenthood*, 890 F.3d at 834.

    *a)*     **Statute of Limitations**

Defendants first argue that Plaintiff cannot prevail on any state law claim because each claim is time-barred by the applicable statute of limitations. California Code of Civil Procedure § 340(c) establishes a one-year statute of limitations for defamation and false light claims. California Code of Civil Procedure § 335.1 establishes a two-year statute of limitations for Plaintiff's statutory name and likeness, intentional infliction of emotional distress, and negligent supervision/hiring/retention claims. And claims under the Unruh Act are subject to, at most, a three-year statute of limitations. *Birdwell v. Avalon Bay Communities, Inc.*, 742 F.Supp.3d 1024, 1052 (N.D. Cal. 2024) (applying three-year limit to disability discrimination claim under Unruh Act). Defendants argue that under the single publication rule, Plaintiff's claims accrued when the 2010 Report was published, and therefore her lawsuit, which was filed on May 7, 2025, is time-barred. ECF 14 at 21. Plaintiff argues that subsequent acts, including the removal of the press release and the video segment and the later republication of the 2010 Report by third parties, triggered later accrual dates. ECF 26 at 3.

"The single-publication rule limits tort claims premised on mass communications to a single cause of action that accrues upon the first publication of the communication, thereby 'spar[ing] the courts from litigation of stale claims' where an offending book or magazine is resold years later." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1166–67 (9th Cir. 2011) (quoting *Christoff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

*v. Nestle USA, Inc.*, 47 Cal.4th 468, 479 (2009)). Although "republication" of the offending content may restart the statute of limitations, "under California's single-publication rule, once a defendant publishes a statement on a website, the defendant does not republish the statement by simply continuing to host the website." *Yeager v. Bowlin*, 693 F.3d 1076, 1082 (9th Cir. 2012); *Roberts*, 660 F.3d at 1169 (continuing to host a press release on a website is "inaction" which "is not a republication"). As the Ninth Circuit has held, "a statement on a website is not republished unless the statement itself is substantively altered or added to, or the website is directed to a new audience." *Yeager*, 693 F.3d at 1082.

Applying these principles, the Court concludes that Plaintiff's claims are time-barred because the offending content was first published in 2010, and Plaintiff has not sufficiently alleged that it was "republished" by Defendants as that term has been interpreted by the Ninth Circuit. As Defendants point out, Plaintiff nowhere alleges that Defendants "substantively altered or republished" the [2010 Report] in the last 15 years. Instead, Plaintiff alleges that Defendants' "modifications," including "the removal of the video from CBS's digital platform" and "the deletion of the associated press release" restarted the limitations period. But Plaintiff does not identify, and the Court is not aware of, any authority supporting the rather illogical proposition that the deletion or removal of content constitutes a "republication" of that content.

Plaintiff also argues that her claims are not time-barred because the video segment of the 2010 Report has been recirculated "by third-party news organizations" and on social media. ECF 26 at 3. But "repetition by third parties does not re-start the limitations period or create a new cause of action against the original publisher." *Lucero v. Mangas*, No. 2:25-CV-1079 DC AC (PS), 2025 WL 2083289 (E.D. Cal. July 24, 2025); *Burgess v. eBay, Inc.*, No. C 11-1898 SBA PR, 2013 WL 60763, at *4 (N.D. Cal. Jan. 2, 2013) ("That the article allegedly was reprinted on the internet does not restart the statute of limitations.").

Finally, Plaintiff's opposition refers in passing to the "delayed discovery rule." ECF 26 at 3. But Plaintiff does not meaningfully allege or otherwise argue that Defendants concealed any facts relevant to the 2010 Report—to the contrary, Plaintiff's allegations acknowledge that the 2010 Report was broadcast on television and posted on the internet. ECF 12 ¶¶ 27, 49, 50, 84.

For these reasons, the Court concludes that Plaintiff cannot establish a probability of prevailing on her state law claims because each claim is time-barred by the applicable statute of limitations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

### b) *Defamation Claim*

Defendants argue that even if Plaintiff's defamation claim were not time-barred, it fails for additional reasons, including because Plaintiff has not identified any false statement, the 2010 Report does not reasonably imply any defamatory statement, the purported implications are constitutionally protected, no statements were false, and Plaintiff failed to plead malice. ECF 14 at 25–29. Plaintiff argues in response that the 2010 Report "falsely insinuated that Plaintiff had fabricated her condition or was mentally unstable, while concealing from viewers the truth documented in her treating physician's medical records that she was medicated and improving under ongoing clinical treatment." ECF 26 at 13.

"Defamation 'involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage.'" *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021) (quoting *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 27 (2007)). The threshold question the Court must answer is "whether a reasonable factfinder could conclude that the [contested] statement implies an assertion of objective fact." *Id.* (citing *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990)). "[W]hile 'pure' opinions (those that do not imply facts capable of being proven true or false) are protected by the First Amendment, a statement that may imply a false assertion of fact is actionable even if it is couched as a statement of 'opinion.'" *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990)); *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 704 (2007) ("[W]e reject the notion that merely couching an assertion of a defamatory fact in cautionary language such as 'apparently' or 'some sources say' or even putting it in the form of a question, necessarily defuses the impression that the speaker is communicating an actual fact."). Whether an allegedly defamatory statement is one of opinion or fact is a question of law. *Id.* The Ninth Circuit applies a three-factor test to resolve that question: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).

The tenor and context of the 2010 Report weighs against actionability. As Plaintiff herself alleges, Inside Edition is a program that purposefully engages in sensationalist journalism that relies on "inflammatory" portrayals of individuals to "provoke public outrage." ECF 12 ¶ 4. This context "makes it more likely that [Defendants'] audiences will 'expect [Inside Edition] to use subjective language that comports with'" that publication style. *Herring Networks, Inc.*, 8 F.4th at 1157. In other words, according to Plaintiff's own characterization of Inside Edition, its audience would anticipate that Inside Edition would "persuade others to [its] positions by use of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

epithets, fiery rhetoric or hyperbole." *Info. Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980).

As to the other factors, the Court considers the statements made in the 2010 Report in their entirety. The 2010 Report video segment begins with an introduction in which the reporter states that the updated story about Plaintiff "raises just as many questions as before." ECF 16-1. The online story states that "Inside Edition has observed [Plaintiff] walking normally, playing with her dog, and even driving! Is she cured?" ECF 16-2 at 2. It goes on to state that "Inside Edition cameras found her walking normally, playing with her dogs, going shopping, even getting behind the wheel of a car and driving!" *Id.* It then poses a series of questions: "So what happened? Did [Plaintiff] really suffer a one-in-a-million reaction to the seasonal flu shot, as she says, or is it all some kind of elaborate hoax? Or is it something else entirely?" *Id.* at 3. The 2010 Report also cites a CDC Report in which a neurologist expressed the belief that there was a "psychogenic component" to Plaintiff's symptoms. *Id.* It cites another physician who, according to the 2010 Report, did not examine Plaintiff, but determined that she did not suffer from dystonia. *Id.* Finally, it includes quotes directly from Plaintiff and references a report "from a doctor who also believes her symptoms were vaccination-induced." *Id.* at 4. Plaintiff does not identify which, if any, of these statements are provably false—rather, she argues that by omitting certain medical records, Defendants presented a false and defamatory impression of Plaintiff's condition and its cause. ECF 26 at 9.

Viewing the content of the 2010 Report in its entirety, the Court concludes that Plaintiff has not plausibly alleged that the 2010 Report implies an assertion of objective fact. "[W]hen an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leading the reader free to draw his own conclusions, those statements are generally protected by the First Amendment." *Partington*, 56 F.3d at 1156–57. Here, the 2010 Report presents various pieces of information, including objective observations, Plaintiff's own statements, and statements by various physicians, and invites the audience to reach its own conclusions about those facts through a series of hyperbolic and rhetorical questions. In *Thomas v. Los Angeles Times Communications, LLC*, the court reached the same conclusion with regard to an article which, according to the plaintiff, implied that he lied about his past and involvement in World War II. *Thomas v. Los Angeles Times Commc'ns, LLC*, 189 F. Supp. 2d 1005 (C.D. Cal. 2002). The court, assuming such implications would be defamatory, determined that "no reasonable juror could find that Defendants intended to convey" the impression that the plaintiff had lied. *Id.* at 1013. The court reasoned that "[a]lthough the article does suggest that [the author] is skeptical about [plaintiff's] life story, it does not conclude definitively either that that [plaintiff] has told the truth or lied." *Id.* at 1014. The Court finds this reasoning applicable here—at most, the 2010 Report conveys skepticism

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

about the veracity of Plaintiff's claims regarding her symptoms and causes, but it leaves the viewer free to draw her own conclusions. Moreover, the 2010 Report cites Plaintiff's own statements and the existence of a medical report corroborating her assertions—thus, Defendants' alleged omission of other details that may have vindicated Plaintiff does not render the 2010 Report actionable. *Price v. Stossel*, 620 F.3d 992, 1001 (9th Cir. 2010) (acknowledging "the common law principle that inaccuracies alone do not render a statement false if there remains substantial truth to what was said" (quotation marks omitted)).

Considering the totality of the circumstances—including the general context of the statements, the specific context of the statements, and the statements' susceptibility of being proven true or false—the Court concludes that Plaintiff has not carried her burden of establishing the probability of prevailing on the merits of her defamation claim.

### c) *Remaining State Law Claims*

Defendants Anti-SLAPP Motion also argues that Plaintiff's ancillary state law claims fail for additional, independent reasons. ECF 14 at 29–33. Plaintiff's opposition to the Anti-SLAPP Motion does not address the substance of these arguments or otherwise defend the remaining state law claims. "Accordingly, the Court deems [these] claim[s] abandoned." *Haas v. Gen. Motors LLC*, No. CV 23-10522-MWF (SKX), 2024 WL 2106953, at *6 (C.D. Cal. Apr. 4, 2024); *Resnick v. Hyundai Motor Am., Inc.*, No. CV1600593BROPJWX, 2017 WL 1531192, at *22 (C.D. Cal. Apr. 13, 2017) ("Failure to oppose an argument raised in a motion to dismiss constitutes waiver of that argument.")

### C. Motion to Dismiss

Defendants separately argue that Plaintiff's sixth claim for relief, which alleges that Defendants violated the Americans with Disabilities Act, 42 U.S.C. § 12182, fails to state a claim for relief. ECF 15. Plaintiff alleges that Defendants operate "commercial media outlets" that constitute "places of public accommodation," and that the 2010 Report's misleading and defamatory representation of Plaintiff "denied Plaintiff the full and equal enjoyment of services offered to the public, namely, fair, accurate, and non-discriminatory media coverage." ECF 12 ¶¶ 108–116.

Defendants raise several arguments in support of their Motion to Dismiss Plaintiff's ADA claim: (1) the claim is time-barred, (2) Defendants' platforms are not "places of public accommodation" under the ADA, (3) Plaintiff has not alleged the necessary nexus to a physical place of public accommodation, and (4) Plaintiff fails to allege that she was treated differently on the basis of her disability. *Id.* at 2. Defendants also argue that the ADA claim is barred by the

Case 2:25-cv-04077-MRA-DFM   Document 35   Filed 12/04/25   Page 15 of 18   Page ID #:1214

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

First Amendment. *Id.*

  **1. Statute of Limitations**

  Title III of the ADA does not establish a statute of limitations, and it remains unsettled which California statute provides the applicable limitations period. The Ninth Circuit has explained that the only possible candidates that could apply "are California's two-year personal injury provision and its three-year period for '[a]n action upon a liability created by statute.'" *Est. of Stern v. Tuscan Retreat, Inc.*, 725 F. App'x 518, 526 (9th Cir. 2018) (emphasis in original) (citing Cal. Civ. Proc. Code §§ 335.1, 338(a)). Assuming, without deciding, that Plaintiff's ADA claim is subject to the more generous three-year limitations period, the ADA claim is time barred if it accrued prior to May 7, 2022.

  The injury complained of in Plaintiff's ADA claim is the alleged false and defamatory portrayal of Plaintiff as depicted in the 2010 Report. ECF 12 ¶¶ 112–15. Plaintiff alleges that by "depict[ing] Plaintiff in a misleading and defamatory manner that exploited her disability for commercial purposes," Defendants engaged in "discrimination in violation of Title III of the ADA and . . . fail[ed] to provide accessible, respectful, and nondiscriminatory services to individuals with disabilities." *Id.* ¶¶ 112, 114. These allegations make clear that Plaintiff's ADA claim centers on Defendants' actions—or inactions—in connection with the 2010 Report, which was first published nearly 15 years before Plaintiff brought this action. Plaintiff's ADA claim is therefore time-barred because it accrued long before May 7, 2022.

  Plaintiff argues that her injury is "ongoing" because she has recently sought access to Defendants' pre- and post-production services within the limitations period and was denied. ECF 26-36 at 9. But Plaintiff's ADA claim, as pled, is not based on those subsequent acts or later denials—rather, it is based on the way she was depicted by Defendants in the 2010 Report. Thus, Plaintiff's reliance on *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002), is misplaced. In *Pickern*, the Ninth Circuit acknowledged that a plaintiff asserting an ADA violation "is entitled to injunctive relief[] for an injury that is occurring within the limitations period." *Id.* at 1137. Here, the FAC does not allege any ADA-related injury occurring within the limitations period. *Pickern* is therefore clearly inapt.

  Moreover, as discussed above, Plaintiff has not adequately alleged any act of "republication" within the statutory period that would otherwise revive her claims. Plaintiff does not allege that the statements in the 2010 Report were "substantively altered or added to" by Defendants. Nor can Plaintiff rely on alleged acts of republication by third parties to render her claims timely.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

### 2. *Place of Public Accommodation*

Defendants argue that, in addition to being time-barred, Plaintiff's ADA claim fails because Plaintiff has not and cannot allege that she was denied access to any physical space owned or operated by any Defendants, and that the alleged denial of access does not bear a sufficient nexus to any physical space. ECF 15 at 20. Plaintiff responds that Defendants' digital and online media services satisfy the nexus test, because the online content is originated in the "physical world." ECF 26-36 at 11.

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The statute and its context "suggest that some connection between the good or service complained of and an actual physical place is required." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000).

Here, the service Plaintiff complains of is "fair, accurate, and non-discriminatory media coverage." ECF 12 ¶ 113. Assuming *arguendo* that such a service would be covered by the ADA, the Court cannot discern any plausible connection between that service and any "actual, physical place." Although Plaintiff correctly points out that the ADA has been applied in cases involving websites and online platforms, those cases still bear a close nexus to physical places of public accommodation. For example, in *Robles v. Domino's Pizza, LLC*, the Ninth Circuit determined that the ADA applied to Domino's website and app, because the "website and app facilitate access to the goods and services of a place of public accommodation—Domino's physical restaurants." *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905–06 (9th Cir. 2019). Here, Plaintiff does not similarly allege that Defendants' online platforms connect viewers to any physical space. Plaintiff contends that the nexus test is satisfied merely because the "news production operations themselves are anchored in physical spaces." ECF 26-36 at 11. But it is insufficient to allege that a service has some physical anchor, without explaining how the denial of service is connected to that physical anchor. No court has adopted the expansive view of the ADA that Plaintiff urges, and the Court declines to do so.

Because Plaintiff has not alleged that Defendants operate a place of public accommodation, Plaintiff's Title III claim fails.

//

//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

## IV. LEAVE TO AMEND

"[F]ederal courts follow FRCP 15(a)'s liberal amendment standard after a successful anti-SLAPP motion aimed at a plaintiff's initial complaint." *Wyles v. Sussman*, No. CV 17-7722-DMG (SKX), 2019 WL 13037075, at *8 (C.D. Cal. Jan. 3, 2019). FRCP 15(a) provides that "[c]ourts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (citation omitted) (quoting Fed. R. Civ. P. 15(a)(2)); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). Leave to amend "should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

Indeed, leave to amend "should be granted more liberally to pro se plaintiffs." *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (citation and quotation marks omitted). A pro se complaint should not be dismissed without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted). Although the Court is skeptical that Plaintiff can cure the deficiencies identified above, "the Court cannot say that with certainty that amendment would be futile at this stage of the proceedings." *Wood v. City of Garden Grove Officer Perkins*, No. SACV0400282DOCSS, 2006 WL 8435068, at *10 (C.D. Cal. May 30, 2006). At the hearing, Plaintiff proposed amending the complaint to include recently discovered facts regarding republication, including information discovered using web archiving tools. Moreover, the Court cannot say that it is "absolutely clear" that Plaintiff could not allege additional facts to establish the defamatory nature of the 2010 Report.

The Court concludes, however, that amendment to Plaintiff's sixth claim for relief would be futile because there is "no set of facts that can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988). Even if Plaintiff could add allegations that would render her ADA claim timely, there is no set of allegations that would constitute a viable claim because Plaintiff cannot establish the physical nexus requirement for the reasons explained above.

## V. CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. Defendants' special motion to strike Plaintiffs' state law claims (First, Second, Third, Fourth, Fifth, and Seventh Claims for Relief) [14] is **GRANTED** with leave to amend; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04077-MRA-DFM | Date | December 4, 2025 |
|---|---|---|---|
| Title | *Desiree Townsend v. Paramount Global et al.* | | |

    2. Defendants' motion to dismiss Plaintiff's Sixth Claim for Relief [15] is **GRANTED** without leave to amend.

    **IT IS SO ORDERED.**

                                                                                 \_\_\_\_\_ : \_\_\_\_\_

                                       Initials of Deputy Clerk    mku